UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| RUBEN NARRO, Plaintiff, | ) | |
| VS. | ) | CAUSE NO. 5:24-CV-045-H |
| SINGH SUKHWINDER, et al., Defendants. | ) | |

---

PRETRIAL CONFERENCE
BEFORE THE HONORABLE JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

OCTOBER 20, 2025
LUBBOCK, TEXAS

---

FEDERAL OFFICIAL COURT REPORTER: MECHELLE DANIEL, 1205 TEXAS AVENUE, LUBBOCK, TEXAS 79401, (806) 744-7667.

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

A P P E A R A N C E S

FOR THE PLAINTIFF:
ANDERSON ALEXANDER
ATTORNEYS AT LAW
101 N SHORELINE BOULEVARD, SUITE 610
CORPUS CHRISTI, TEXAS 78401
BY: STEPHEN F. BECHTOL

BENJAMIN H. DAVIDSON
ATTORNEY AT LAW
5010 UNIVERSITY AVENUE, SUITE 500
LUBBOCK, TEXAS 79413

FOR THE DEFENDANTS:
MEHAFFY WEBER
ATTORNEYS AT LAW
ONE ALLEN CENTER
500 DALLAS STREET, SUITE 2800
HOUSTON, TEXAS 77002
BY: WARREN B. WISE
GRANT CARPER

* * * * *

INDEX

PLAINTIFF'S EXHIBIT NO. 7 PREADMITTED.................. 18

REPORTER'S CERTIFICATE................................ 23

* * * * *

P R O C E E D I N G S

THE COURT: The Court calls for pretrial conference Narro vs. Singh, 5:24-CV-045.

Who is here on behalf of the plaintiff?

MR. BECHTOL: Stephen Bechtol and Ben Davidson, Your Honor.

THE COURT: Thank you, Mr. Bechtol. Good morning.

MR. BECHTOL: Good morning.

THE COURT: And for the defendant?

MR. WISE: Warren Wise, Your Honor; my associate Grant Carper to my right; and my assistant Michelle Stutes in between us.

THE COURT: Good morning.

MR. WISE: Good morning.

MS. STUTES: Good morning.

MR. CARPER: Good morning.

THE COURT: All right. And, Mr. Wise, is your client present?

MR. WISE: He is not, Your Honor.

THE COURT: All right.

MR. WISE: I have informed him of your order Friday, but no.

THE COURT: But what?

MR. WISE: But no, he is not here this morning. Sorry.

08:35 THE COURT: So he has been ordered to be present and he has just decided he doesn't care about the order; he's not going to come?

08:35 MR. WISE: Yes, Your Honor.

08:35 THE COURT: You informed him of my order to be here?

08:35 MR. WISE: Yes, Your Honor.

08:35 THE COURT: What is your view as to whether or not the Court has authority to sanction him for violating the Court's order?

08:35 MR. WISE: I don't know. I have not researched that issue. You know, I just ask for the Court's leniency. We've addressed the reason why he's not coming.

08:35 THE COURT: Yeah, there was a motion to continue the trial for the reason. That motion was denied. We talked about it from just a trial presentation standpoint, and the plaintiffs need to be able to call witnesses that were expected to be called. And a decision was made and, I thought, an agreement between the parties that the expectation was your client would be here today. Is that right?

08:35 MR. WISE: That's--

08:35 THE COURT: That's how we walked away from the pretrial conference. Am I misremembering that?

08:36 MR. WISE: No, Your Honor. As I said, we told him of your order, and that's really all I could do, Your Honor.

08:36 THE COURT: Okay. All right. Well, I will look into what consequences need to result, if any.

08:36 Mr. Bechtol, on this, when do you plan to call the defendant? And now you will need to call him by video depo. There was an agreement at the pretrial conference-- Before we just decided, you know what, we're going to avoid all of the mess of that, just have him be here, there was an agreement that you could call him by video whenever you want. When-- Obviously that still is in existence. Correct, Mr. Wise?

08:36 MR. WISE: The video deposition?

08:36 THE COURT: Your agreement that he can call him-- Let's go one at a time. The agreement that he can call-- Plaintiff's counsel can call him by video whenever he wants without objection from you. Correct?

08:36 MR. WISE: Yes, Your Honor.

08:37 THE COURT: Have you ever not had a client be present for--

08:37 MR. WISE: I have not.

08:37 THE COURT: Okay. Mr. Bechtol, when do you plan to call the defendant by video?

08:37 MR. BECHTOL: I suppose I would call him first then.

08:37 THE COURT: First?

08:37 MR. BECHTOL: Yes, Your Honor. I mean, it's a 20-minute deposition cut.

08:37 THE COURT: Okay.

08:37 MR. BECHTOL: I am concerned about the--proving up diversity if he's not here for me to say, are you from--where are you from? You're from California?

08:37 I mean, in the cuts, we see that--where he's traveling from and where he's located and we see his California license plate that he's asked about. But just from a jurisdictional standpoint, I am--if he's not here for me to prove that he is not a citizen of Texas.

08:37 THE COURT: Understood. Perhaps, during the break, the parties could reach an agreement on a stipulation that could be admitted into evidence to resolve that in light of the fact that it's certainly not your fault that the defendant is not present.

08:38 Okay. So you plan to call him first, 20-minute video depo cut.

08:38 Mr. Wise, you're familiar with this 20 minutes; you have no objection to it. Correct?

08:38 MR. WISE: Your Honor, my objection to it is, the deposition cut--in his deposition, he stated that the accident was the plaintiff's fault. He has reconsidered. Ultimately, Your Honor, no. No, I think, in light of the circumstances this morning, he should be entitled to play the video cut.

08:38 THE COURT: Okay. You can play it without objection. Have you tested the system and the video?

08:38 MR. BECHTOL: I have not.

08:38 THE COURT: Okay. You need--

08:38 MR. BECHTOL: I have used ClickShare before, but--

08:38 THE COURT: All right. You should do that as soon as you can. I'll ask my IT person to be here. Depending on the quality of the video, sometimes it can be jumpy. The U.S. Attorney's Office, when they have a very, very high quality--so large files--it can be jumpy. We have moved our, like, receivers around to try to prevent that. We can hard-wire things to try to prevent that. If that is an issue, my IT person can do whatever he can at this point to make it as good as he can.

08:39 Mr. Bechtol, do you have any evidence or indication-- Well, what is your position on what, if anything--what consequences, if any, should result from the defendant not being present?

08:39 MR. BECHTOL: It is a--it's a difficult position, because part of these type of cases is that there's insurance coverage which requires cooperation from the actual client, and so there is an issue of wanting to jeopardize coverage. However, we do have the deposition, and we're here at trial. Now, I haven't--I frankly didn't look into the issue of what we would ask for in the event that he didn't obey the Court order.

08:40 THE COURT: Yeah. We all expected him to be here, I'm sure, so I don't blame you for not looking into that. If

there is some relief that you believe you're entitled to, let me know. I assume that you'll want to reference the defendant's absence.

08:40 Any-- I assume there's no objection to that?

08:40 MR. WISE: No objection to that, Your Honor. I could address the coverage issue, if that's a concern, but--

08:40 THE COURT: Sure, in a second.

08:40 So, Mr. Bechtol, to the extent you want to mention to the jury in openings, closings, that the defendant is not present and that he has chosen not to be here and so you have no choice but to play a video deposition, there's no objection to that, and you can do that. I think that's fair game in light of the defendant's refusal to be present.

08:41 All right. The coverage issue, Mr. Wise?

08:41 MR. WISE: Yes. The coverage--the insurance--Mr. S. Chahal Trucking's insurance carrier is well aware of, A., the Court's order, and, B., my client's not being here today due to the Diwali holiday, and they were okay with that. They are not--as far as I've been told, they are not denying coverage or in any way saying--holding a reservation of rights in that regard or anything like that, so--

08:41 THE COURT: Okay. It has not affected coverage?

08:41 MR. WISE: To the extent that there is an award within the coverage policy limits, that issue will not affect the coverage issue.

08:41 THE COURT: Okay.

08:41 MR. WISE: And, Your Honor, if I may, we talked briefly about it. The extent to which I'm able to explain why he is not here, is that something we can discuss or not discuss?

08:42 THE COURT: Okay. Yeah, go ahead. Based on what he has told you?

08:42 MR. WISE: I'm sorry?

08:42 THE COURT: Based on what he has told you?

08:42 MR. WISE: By what my client has told me, yes.

08:42 THE COURT: Over the weekend?

08:42 MR. WISE: Yes.

08:42 THE COURT: To the extent it doesn't breach attorney/client privilege or you want to waive it to inform the Court, that's fine. That's your choice. Go ahead.

08:42 MR. WISE: Okay. Thank you. Oh, I meant in front of the jury. I'm sorry.

08:42 THE COURT: Oh. No. No, no, no. No, he has been ordered to be here. We're not going to--we're not going to create an issue for this jury as to why he's not here and whether it's fair or reasonable for him not to be here. He has been sued in federal court. The Court asked him to be present, because everyone expected him to be called, and he moved to continue. I denied it; gave reasons for that denial. I know he can disagree with that, but I denied it. And at the

pretrial conference, we all reached a place where the expectation was he'd be here, and he's in violation of that expectation. So we're not going to get into it.

08:42 You also should not address why he's not here; just he has chosen not to be here. The reason is irrelevant.

08:43 Okay. Understood? Understood, Mr. Bechtol?

08:43 MR. BECHTOL: Am I allowed to say that--and that's in violation of the Court's order? The Court ordered him to be here today?

08:43 THE COURT: No.

08:43 MR. BECHTOL: Just he is not--he has chosen not to be here?

08:43 THE COURT: Yeah.

08:43 MR. BECHTOL: Okay.

08:43 THE COURT: Yeah, I think the jury will find it very unusual that someone who has been sued in federal court has chosen not to be present, and that's, you know, a natural consequence of the choice not to be here.

08:43 Okay. Is your client here?

08:43 MR. BECHTOL: Yes, Your Honor.

08:43 THE COURT: Okay.

08:43 MR. BECHTOL: I was going to ask if he can approach and--

08:43 THE COURT: Yes, you may. Yeah, you're welcome to come and sit.

(PAUSE)

THE COURT: You are Mr. Narro?

MR. NARRO: Good. How are you, brother?

THE COURT: I'm sorry?

MR. NARRO: I'm sorry. Good, Judge. I'm sorry.

THE COURT: You are Mr. Narro?

MR. NARRO: Yes, sir.

THE COURT: All right. Thank you very much. I'm Judge Hendrix. It's nice to meet you.

All right. A couple of things from the Court this morning-- All right. The last thing I'll say on the defendant choosing not to be present, to the extent there was-- Well, let me just ask, when were you informed that he would not be present, despite the Court's expectation and the parties' expectations?

MR. WISE: Well, I was informed of it throughout the week leading up to the pretrial conference and informed Mr. Bechtol of that. Then after the pretrial hearings, I informed him of the Court's rulings essentially as soon as the hearing was over. And, frankly, there was some back and forth, and I wasn't very clear on it until probably Saturday, sometime on Saturday.

THE COURT: Okay. All right. Understood. Well, to the extent there was a--the decision was made that he wouldn't be here or that the Court couldn't force him to be

here, I would have expected a filing seeking leave from that. There wasn't such a filing. We'll deal with it now. I know this is the first time you're appearing before me in trial, but going forward, if there's an expectation that--of X is going to happen, and you believe X either can't happen or will not happen, you should seek leave from the Court.

08:46 MR. WISE: Yes, Your Honor.

08:46 THE COURT: And you might be right, but this is just a surprise to everyone. Okay?

08:46 MR. WISE: I apologize, Your Honor. Yes, Your Honor.

08:46 THE COURT: All right. And, Mr. Bechtol, you're going to call Mr. Singh first. What is your order of witnesses after that?

08:46 MR. BECHTOL: My expectation today, Your Honor, is Singh and then the video of Dr. Valente. We have our expert billing--our billing expert, David Balat. And then I planned on calling Emri Narro, my client's wife, should we have time.

08:46 THE COURT: Okay.

08:46 MR. BECHTOL: And then Mr. Narro would be last.

08:46 THE COURT: All right. Okay. And so that is the--those are your witnesses for your part of the trial? You expect Mr. Singh, and then the video deposition of Valente, then Balat. Which expert is that? Remind me.

08:47 MR. BECHTOL: He's our billing expert, basically a

counter to the expert that they have hired.

08:47 THE COURT: Okay.

08:47 MR. BECHTOL: And if--

08:47 THE COURT: Then your client's wife, and then your client?

08:47 MR. BECHTOL: Yes, Your Honor.

08:47 THE COURT: Okay. All right. At the end of the day, I would ask the parties to exchange the witnesses they anticipate calling the next day so everyone knows what is coming.

08:47 There were three pending motions at the end of the pretrial conference. I heard argument. If you've checked the docket this morning, you've seen I've issued an order resolving those. Worked on that over the weekend. That order is on the docket. I know you've been preparing for trial and in my courtroom this morning, so to the extent you haven't seen that, I'll give you the bottom line.

08:47 The motion to exclude evidence of lost wages and lost earning capacity is denied.

08:47 The motion to limit the testimony of the vocational rehabilitation expert is granted.

08:47 And the motion to bar the plaintiff from asking for specific dollar amounts for the noneconomic damages is denied.

08:47 The reasons are given in the Court's order. I know we might have some update about the vocational expert and about

future earning capacity. We'll get to that in one second. But that's the bottom line on those motions.

08:48 Any questions about that, Mr. Bechtol?

08:48 MR. BECHTOL: No, Your Honor.

08:48 THE COURT: Mr. Wise?

08:48 MR. WISE: No, Your Honor.

08:48 THE COURT: Okay. On scheduling, normally, I ask the jury how long they want to work. If they want to work until 6:00, that's fine. I will tell them that. But that can't apply today. I teach at the law school on Mondays. My class starts at 5:30, so I have a hard stop at 5:00. So today, we will stop at 5:00. Normally I would let you go for 15 more minutes if you were almost done with a witness. Today, I mean, I might let you go just a few over, but otherwise, I'm going to have to put a lid on, and then we'll restart tomorrow.

08:48 After that, though, I'm going to ask the court security officers to talk to the petit jury when they want to start in the morning. If they want to start early, we'll start at 8:00. Typically, the default is 9:00 to 5:00, but I like to accommodate the jurors if they want to.

08:49 In the Northern District of Texas, the Lubbock Division is enormous. We might have jurors coming from this little town called Muleshoe that's over an hour away. So some of them, it's just really difficult for them to be here early, so it might not-- We might start at 9:00. That's not a sign

of not an interest; it's a just sign of the geography of West Texas.

08:49 If-- The parties expect to be done in three days. I'm sure we'll meet that expectation, but if something goes sideways and we're not done, either we're waiting on the jury to continue to deliberate or you're still within your time but we haven't finished yet, we're going to have to take a break on Thursday. I have a morning and afternoon criminal docket. I'm essentially on the bench most of the day on Thursday for my criminal proceedings, and I have an event at the law school over lunch. There's just no reasonable window, as a former trial lawyer, to put on--to get momentum going and start a case. So I'll tell the jury, sorry, you get tomorrow off--you get Thursday off, and we'll start again Friday. Hopefully it doesn't come to that, but just as a warning for y'all, and you can plan accordingly.

08:50 Okay. Update about potential agreements between the parties. Mr. Bechtol, defense counsel informed my courtroom deputy and, perhaps, my law clerk of agreements. I just want to confirm it's correct. You are not calling Swiger, Mendez, or Lewis. Correct?

08:50 MR. BECHTOL: We have made that decision, yes, Your Honor.

08:50 THE COURT: All right. And I was also informed, through my courtroom deputy, that there's an expectation you

will not offer evidence regarding the loss of future earning capacity. Is that correct?

MR. BECHTOL: That's correct, Your Honor.

THE COURT: All right. There was-- I asked the parties to confer about Exhibit 7. Has there been an agreement on Exhibit 7?

MR. BECHTOL: Yes, Your Honor. We will limit it to four pictures--four or five pictures, but--that are strictly of his back and that portion of the injury. So we worked that out.

THE COURT: Okay. Is that correct, Mr. Wise?

MR. WISE: Yes, Your Honor. I thought it was three photos. It's in the email. But, yes, we agreed.

THE COURT: All right. Do you have a copy for--or can you just tell me which three it is? One second. Let me get the exhibit in front of me.

(PAUSE)

MR. BECHTOL: May I approach, Your Honor?

THE COURT: Yes. Just hand it to my courtroom deputy. Thank you.

All right. And, Mr. Wise, the three that are being shown to me, or however many, there's an agreement? These can be preadmitted?

MR. WISE: Yes, Your Honor.

THE COURT: All right. One second.

08:52 MR. WISE: I think there's--well...

08:52 THE COURT: All right. There are five here.

08:52 (PAUSE)

08:53 THE COURT: Exhibit 7, as limited, is preadmitted. You may approach.

08:53 MR. BECHTOL: Thank you.

08:53 THE COURT: Were there any other agreements on the disputed exhibits that the Court needs to be aware of?

08:53 MR. WISE: I don't recall there being any other disputed exhibit. Oh, well, there's the surveillance, but that's going to be an authentication issue that--

08:53 THE COURT: Okay. So the authentication issue remains. That's fine. Anything else, Mr. Bechtol?

08:53 MR. BECHTOL: No, Your Honor.

08:54 THE COURT: All right. Okay. That was the-- Okay. Last thing on the Court's list, and then I'll hear from the parties if there's anything the Court can answer before we begin. There are-- You should have charts before you. You do. Correct? All right. We have three jurors that have not shown. Juror Number 13 is absent, that is Sylvia Jennings; Juror Number 15, that's Wanda Hughes; and Juror Number 17, Emily Frank. Those are the only three. Everyone else has been checked in.

08:54 You should also have a copy of--a hard copy of the Court's proposed final instructions. I'll ask you to review

that and prepare for our charge conference, depending on how--

(BRIEF INTERRUPTION)

THE COURT: For the record, we paused because the door to the venire empanelment room opened. We've got a new clerk's office person we're training up on jury-- Pardon that.

You should have the jury instructions. Prepare for the conference. Depending how fast we go, we might do it tomorrow morning. So be prepared, at the very least, to do the final charge conference tomorrow morning.

Okay. Mr. Bechtol, anything else from the plaintiff before we bring the venire panel in?

MR. BECHTOL: No, Your Honor. I mean, going back to the sanction of not showing up, the only other thing that I could think is to prevent them from presenting their expert evidence, their billing expert and their biomechanical engineer. I would think it would be an appropriate sanction for them not to be able to present their expert defenses if they're not even willing to obey the court order and show up.

THE COURT: How does one relate to the other?

MR. BECHTOL: Well, I'm going back and thinking of what my--what I would ask for a sanction. I would like the opportunity to look into that and research it today--

THE COURT: Okay.

MR. BECHTOL: --but just as a thought out loud, going forward, I think that might be the appropriate relief

that Plaintiff would seek.

08:56 THE COURT: Okay. Well, you can look further into that and I'll hear from you on it.

08:56 Anything else before we bring them in?

08:56 MR. BECHTOL: Did you want me to try and test this first or try and do it, like, at lunch or something?

08:57 THE COURT: You probably will not have time to test it now. So at our lunch break, you can test it.

08:57 MR. BECHTOL: And is our--is the timeline still jury and then early lunch and then opening, or do you think that we'll get opening before?

08:57 THE COURT: It depends on how fast we get them in the box. Typically, they're in the box by around 11:30 and we'll break for lunch, given that both sides, I believe, want 25 minutes for opening. So we'll just take an early lunch if we get there. If they're in the box by 11:00, then we'll do openings.

08:57 At the break now, you're welcome to come to the other side of counsel table so you can face the venire panel.

08:57 Mr. Wise, anything from the defense?

08:57 MR. WISE: No, Your Honor. In light of--the only thing I might mention, to the extent the jury cares, since there's three witnesses we thought would be called that aren't going to be called, there's at least an outside chance that we're done presenting the case to the jury early, mid-afternoon

tomorrow.

THE COURT: Okay.

MR. WISE: It might be worth mentioning to the jury, you know, hey, if y'all want to get here at 8:00, there's a chance we could-- I don't know. That's up to Your Honor, but--

THE COURT: I'll say--instead of saying three days-- No, I'm still just going to under-promise and over-deliver. So I'll still say three days, and they'll be in a good mood if we beat that estimate.

Regarding sanctions-- I'm sorry. Mr. Wise, yes?

MR. WISE: I'm sorry. One thing that Ms. Stutes just reminded me of, Stephen and I neglected to talk about lunch for the jurors. I'm willing to pay for the lunch for the jurors one day if he wants to the other, or both--we're willing to pay for the lunch for the jurors both days and we don't have to say it's from us; it's from the parties. And Michelle can work on that. That's just--

THE COURT: If there's an agreement during the break, tell my courtroom deputy. There's no obligation to do that. I've assumed there wasn't an agreement, and I'll just give them an hour and 15 minutes. But if you want to keep them here and keep them moving fast and keep them in a good mood and provide them lunch, just let me know. But we would need the lunch to be here by 11:30 and something that won't get too cold

if it sits for 20 minutes or something.

08:59 MR. WISE: It may be difficult this morning, but maybe tomorrow. We'll talk about it.

08:59 THE COURT: Okay. Just--

08:59 MR. BECHTOL: Tomorrow, I'm definitely in agreement that we can provide them lunch, and maybe that gets us--gets them out of here quicker--

08:59 THE COURT: Okay.

08:59 All right. On sanctions, Mr. Bechtol, look, I share your frustration with the surprise this morning. We all expected the defendant to be here. As you consider what, if anything, you want to ask for and you do your research, it's the Court's understanding, setting aside the surprise and the lack of notice from defense counsel that, "Judge, I know you asked him to be here; we're asking leave from that for the following reasons"-- That didn't happen. It's my understanding that, because the defendant lives so far away, he's outside even the Court's power, even as a party, to require him to be here. Rule of Civil Procedure 45 previously allowed the Court to order a party to appear even if otherwise outside the Court's subpoena power. But the 2013 amendments now provide that a subpoena is not possible unless the party resides, is employed, or regularly transacts business in person in the state.

09:00 Now, if you have evidence of that, then, you know,

I'll hear you--I'll certainly hear you out. And we're certainly surprised. But I'm not certain I have the power to require him to be here. If that understanding is incorrect, let me know. You certainly have the benefit of holding that against them as a result, but just take that into account. Does that make sense?

09:00 MR. BECHTOL: Yes, Your Honor.

09:00 THE COURT: Okay. All right. We will be in recess. We'll ask the jury clerk to bring the panel in. As soon as they are seated, I'll come back; we will start trial.

09:00 Anything else, Mr. Bechtol?

09:01 MR. BECHTOL: No, Your Honor, I--

09:01 THE COURT: Mr. Wise?

09:01 MR. WISE: No, Your Honor.

09:01 THE COURT: All right. We're in recess.

09:01 (END OF PRETRIAL CONFERENCE)

I, Mechelle Daniel, Federal Official Court Reporter in and for the United States District Court for the Northern District of Texas, do hereby certify pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*/s/ Mechelle Daniel* **DATE** JANUARY 5, 2026

MECHELLE DANIEL, CSR #3549
FEDERAL OFFICIAL COURT REPORTER